**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JENNIFER SMITH,                                        *

      Plaintiff,                                        *

v.                                                             *         Civil Action No. CJC-25-0803

FRANK BISIGNANO,[1]                          *
COMMISSIONER OF
SOCIAL SECURITY,                              *

      Defendant.                                      *

**MEMORANDUM OPINION**

Plaintiff/Claimant Jennifer Smith petitions this Court to review the Commissioner of the Social Security Administration's (the "Commissioner") final decision involving her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1 ¶ 2. The Court has considered the record and the parties' briefs. ECF Nos. 8, 10, 19. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Court reverses and remands this case for further proceedings.

---

[1] The Acting Commissioner of the Social Security Administration has changed during the life of this case, but this only affects the caption. Under the Federal Rules of Civil Procedure, "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. 405(g) (stating any action involving a petition for judicial review of a final decision of the Commissioner "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security"). Smith filed this case against Leland Dudek on March 12, 2025, when he was Acting Commissioner of the Social Security Administration. Frank Bisignano became Acting Commissioner on May 7, 2025. As a result, Commissioner Bisignano has been automatically substituted as the Defendant.

**PROCEDURAL HISTORY**

In March 2012, Smith applied for DIB and SSI under Titles II and XVI of the Social Security Act, respectively. R. 93, 105. In her application, Smith alleged she became disabled on December 11, 2011. *Id.* Smith's date last insured was December 31, 2013. R. 105. Smith's claims were denied initially and on reconsideration. R. 119–20, 149–50. Smith then requested an Administrative Law Judge ("ALJ") review her claims. R. 207. An ALJ held a hearing on August 7, 2014, and denied her claims in an August 19, 2014, opinion. R. 65–92, 153–69. Smith appealed to the Social Security Appeals Council, which vacated and remanded the ALJ's decision. R. 178–79.

An ALJ held a second hearing on May 5, 2016, and, again, the ALJ denied Smith's claims in a July 29, 2016, opinion. R. 13–27, 35–64. Smith appealed to the Appeals Council, which declined to review the decision. R. 1. Smith then petitioned for judicial review in this Court, and the Court reversed and remanded the ALJ's decision. R. 1047–58. The Appeals Council issued its remand order thereafter. R. 1061–62.

An ALJ held a third hearing on July 15, 2019. R. 942–78. In an October 29, 2019, opinion, the ALJ found that Smith was statutorily disabled on July 26, 2019. R. 812–13. As a result, the ALJ denied Smith's claim for DIB because the ALJ found Smith statutorily disabled after her date last insured—the date by which Smith must have been found disabled to receive DIB. *Id.*; 20 C.F.R. § 404.131(a). Finally, the ALJ granted Smith's claim for SSI as of July 26, 2019. R. 813. Smith again petitioned for judicial review in this Court, and the Court reversed and remanded the ALJ's decision. R. 2092–2106. On remand, the Appeals Council affirmed the ALJ's finding that Smith became statutorily disabled on July 26, 2019, but remanded the case to determine whether Smith was statutorily disabled prior to that date. R. 2109.

An ALJ held a fourth hearing on February 11, 2022. R. 2029–54. In a February 25, 2022, opinion, the ALJ again denied Smith's DIB claim and denied her SSI claim for the period before July 26, 2019. R. 1999–2016. Smith appealed to the Appeals Council, which declined to review the decision. R. 1980.

Smith then timely petitioned for judicial review in this Court. ECF No. 1.

**THE ALJ'S DECISION**

A claimant is legally disabled under the Social Security Act if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (DIB); 20 C.F.R. § 416.905(a) (same for SSI). The ALJ must conduct a five-step sequential evaluation to determine if a claimant is disabled. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). The ALJ reviews whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Prior to steps four and five, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which is the most work a claimant can do despite their physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017).

The ALJ here evaluated Smith's disability claims as follows. Initially, the ALJ pointed out that, on this most recent remand, the Appeals Council affirmed the previous finding that Smith was statutorily disabled as of July 26, 2019. R. 1999. As a result, the ALJ's findings were limited to whether Smith was statutorily disabled prior to that date. R. 1999. Next, at step one of

the sequential evaluation, the ALJ found that Smith had not engaged in substantial gainful activity since December 11, 2011, Smith's alleged disability onset date. R. 2002. At step two, the ALJ determined that Smith had the following severe impairments: "osteoarthritis, degenerative disc disease, obesity, affective mood disorder, and anxiety-related disorder." R. 2003. At step three, the ALJ decided that Smith's impairments did not meet or equal any of the listed impairments in the Social Security Regulations. R. 2003 (citing 20 C.F.R. § 404, Subpart P, App'x 1). Next, the ALJ found that Smith had the RFC to perform light work[2] with the following limitations:

> [T]he claimant can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She can stand or walk for a total of 6 hours in an 8-hour workday. She can sit for a total of 6 hours in an 8- hour workday. She can push or pull, as much as [s]he can lift and/or carry. She can frequently climb ramps and stairs. She can frequently climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She retains the ability to concentrate, persist, and stay on pace with regard to performing simple 1-4 step, routine, repetitive tasks where such work is performed in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers, supervisors, and with the general public.

R. 2007 (footnote call numbers omitted). At step four, the ALJ determined that Smith had been unable to perform past relevant work. R. 2014. At step five, however, the ALJ found that there are jobs that exist in significant numbers in the national economy that Smith could perform. R. 2014. Thus, the ALJ concluded that Smith had not been statutorily disabled on or before July 25, 2019. R. 2015.

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 416.967(b).

**STANDARD OF REVIEW**

The Court will affirm the ALJ's decision if the ALJ's factual findings are "supported by substantial evidence and were reached through application of the correct legal standard." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citation omitted); 42 U.S.C. § 405(g). An ALJ's decision satisfies the substantial evidence standard if it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). In conducting this review, the Court determines "not just 'whether the ALJ examined all relevant evidence' but also whether the ALJ 'offered a sufficient rationale in crediting certain evidence and discrediting other evidence.'" *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (citation omitted).

**DISCUSSION**

Smith argues that the ALJ's RFC analysis and the ALJ's symptom analysis were not supported by substantial evidence. ECF No. 10 at 5, 16. Because the Court finds the ALJ erred in evaluating Smith's symptoms, Smith's RFC argument need not be addressed.

ALJ's conduct a two-step process to evaluate a claimant's symptoms. First, "the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting 20 C.F.R. §§ 404.1529(b)); *see also* 20 C.F.R. § 416.929(b). "Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work [a 40-hour work week] and whether the claimant is disabled." *Arakas*, 983 F.3d at 95; 20 C.F.R. §§ 404.1529(c); 416.929(c). The Court

5

reviews the ALJ's analysis of the second step because that is where the parties direct their arguments.

Smith contends that the ALJ erred in four ways when the ALJ evaluated Smith's symptoms under the second step. ECF No. 10 at 16–25. The Court rephrases these contentions into three issues: (1) whether the ALJ discounted Smith's subjective complaints about her symptoms using objective medical evidence, (2) whether the ALJ failed to explain how Smith's symptoms affected her ability to work, and (3) whether the ALJ erroneously assessed how Smith's daily activities demonstrated Smith's ability to work. ECF No. 10 at 16–25. The Court addresses each in turn.

## I.    The ALJ Erroneously Discounted Smith's Subjective Complaints Using Objective Medical Evidence.

First, Smith argues that the ALJ erred by using objective evidence to discount her subjective complaints about the intensity and persistence of her symptoms. An ALJ evaluates the intensity, persistence, and limiting effects of a claimant's symptoms under the second step using multiple factors, not least of which is subjective evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c). Generally, an ALJ considers "the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Shelley C.*, 61 F.4th at 360 (citation omitted). Although the ALJ's analysis is multifaceted, a claimant is "entitled to rely exclusively on subjective evidence to prove the second part of the test." *Arakas*, 983 F.3d at 95 (citation omitted).

An ALJ's evaluation of objective medical evidence and subjective complaints is further determined by the type of impairment the claimant suffers. For most impairments, an ALJ errs when the ALJ disregards a claimant's subjective complaints *solely* because they are not

supported by objective medical evidence. *Arakas*, 983 F.3d at 95. On the other hand, the Fourth Circuit has recognized that, for certain impairments, such as major depressive disorder or fibromyalgia, "ALJs may not rely on objective medical evidence (or the lack thereof)—*even as just one of multiple factors*—to discount a claimant's subjective complaints" because such impairments do not typically produce objective indicators of limiting symptoms. *Arakas*, 983 F.3d at 97–98 (emphasis added) (holding that ALJs cannot discount subjective complaints of Fibromyalgia based on objective medical evidence); *Shelley C.*, 61 F.4th at 361 (extending holding in *Arakas* to major depressive disorder). Courts have often ordered remand because an ALJ relied on objective evidence as a factor to discount symptoms of major depressive disorder or fibromyalgia. *See, e.g.*, *Ari T. v. Dudek*, No. 2:23CV686, 2025 WL 963057, at *7–9 (E.D. Va. Mar. 31, 2025) (finding the ALJ erred in discounting claimant's depression symptoms by using objective medical evidence as a factor); *David R. v. Kijakazi*, Civil Action No. DLB-20-1277, 2021 WL 3144528, at *4 (D. Md. July 26, 2021) (same for claimant's fibromyalgia symptoms); *Leniya S. v. Saul*, Civil Action No. DLB-19-2990, 2021 WL 1224067, at *2–3 (D. Md. Mar. 31, 2021) (same); *Cynthia P. v. Kijakazi*, Civil Action No. BPG-21-434, 2022 WL 20699809, at *2 (D. Md. Mar. 2, 2022) (same); *but see Theodore F. v. Kijakazi*, Civil Action No. ADC-22-1658, 2023 WL 2837585, at *5 (D. Md. Apr. 7, 2023) (declining to apply prohibition on using objective evidence as a factor because claimant had impairments that produced objective evidence).

Here, the record reflects that Smith was diagnosed with major depressive disorder. Smith received this diagnosis following a discharge from the hospital in 2013. R. 777. The ALJ pointed out this diagnosis in his opinion and found that Smith had the severe impairment of an affective

mood disorder. R. 2003, 2010. As a result, the ALJ could not rely on objective medical evidence as a factor in discounting Smith's subjective complaints.

The ALJ, however, did rely on objective medical evidence to discount Smith's complaints.[3] At step two of the two-step symptom evaluation, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 2008. In analyzing Smith's subjective complaints, the ALJ noted that the record reflected evidence that Smith suffered "depressed and anxious moods, irritability, and sleeping difficulties" but that she nevertheless was able to concentrate, persist, and stay on task during a normal workday because there was objective medical evidence that she "consistently had linear and logical thought processes, normal thought content, fair insight and judgment [and] intact memory skills." R. 2012. When reviewing the opinion evidence of the state agency psychiatric consultants, the ALJ again pointed out Smith's depression, irritability, and sleeping difficulties but discounted them because "her thought process, thought content, memory skills [and] orientation … were consistently within normal limits." R. 2013. While the ALJ recognized Smith's subjective complaints regarding her symptoms, the ALJ simultaneously discounted those

---

[3] The Court recognizes that the ALJ's opinion predates the holding in *Shelley C.*, which extended the prohibition on using objective evidence to discount subjective complaints to major depressive disorder. *See Shelley C.*, 61 F.4th at 361. This fact, however, does not alter the Court's conclusion that the rule in *Shelley C.* applies to this case. It is settled law that when a federal appellate court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 97 (1993). Thus, although the ALJ issued his opinion in February 2022 and the Fourth Circuit did not issue *Shelley C.* until 2023, because this case is still "open on direct review," *id.*, *Shelley C.*'s holding applies retroactively here.

symptoms in part based on objective medical evidence. As a result, the ALJ erred by using this evidence, even as one of multiple factors, to discount Smith's subjective complaints.

**II.      The ALJ Erroneously Evaluated the Intensity and Persistence of Smith's Symptoms.**

In addition to erroneously discounting Smith's subjective complaints, the ALJ failed to adequately discuss the intensity and persistence of Smith's symptoms to permit meaningful review by the Court. When, as here, an ALJ analyzes a claimant's symptoms to determine their RFC, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Hultz v. Bisignano*, 162 F.4th 111, 123 (4th Cir. 2025) (citation omitted). In other words, an ALJ must explain why they reject evidence that runs contrary to their conclusions. *See id.* An ALJ's failure to adequately discuss the intensity or persistence of a claimant's subjective complaints that run contrary to the ALJ's conclusions requires remand. *See Kevin T. v. O'Malley*, Civil Action No. CDA-23-0312, 2023 WL 8993664, at *4 (D. Md. Dec. 28, 2023) (citing *Oakes v. Kijakazi*, 70 F.4th 207, 215–16 (4th Cir. 2023)).

Here, the ALJ failed to discuss important facts about the intensity and persistence of Smith's subjective complaints that contradict his decision. While the ALJ summarized the reports regarding Smith's mental health symptoms and stated some of Smith's subjective complaints, R. 2008–12, the ALJ omitted subjective complaints that may determine whether Smith could work. The ALJ did not discuss that Smith testified how she has severe depressive episodes three times per week in which she is stuck in bed, and that these episodes have occurred from at least 2019 to as far back as 2013, R. 963, that she has frequent mood swings despite taking medicine to address such symptoms, R. 55, 78–79, 959, or that there is disputed subjective evidence about whether Smith can concentrate while reading, *see* R. 60, 83, 542, 962. Additionally, although the ALJ states that Smith does not need reminders to take her medicine,

R. 2008, that fact is disputed in the record, *see* R. 952, and the ALJ does not resolve the dispute in his opinion. By failing to address these facts, the Court cannot properly review whether the ALJ's symptom analysis was supported by substantial evidence. Thus, the ALJ erred.

**III.    The ALJ Erroneously Assessed Smith's Daily Activities.**

Finally, Smith contends that the ALJ erroneously assessed her daily activities when evaluating the intensity and persistence of her symptoms. ECF No. 10 at 22. An ALJ can consider a claimant's daily activities when evaluating whether a claimant's symptoms are so intense and persistent as to render them unable to work. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). When considering a claimant's daily activities, an ALJ must satisfy two requirements. First, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [she] can perform them." *Oakes*, 70 F.4th at 216 (citation omitted). Second, because "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," an ALJ must adequately explain how a claimant's daily activities indicate that they can work. *Arakas*, 983 F.3d at 100–01 (citation omitted). If an ALJ does not adhere to these requirements, remand is warranted. *Willie B. v. O'Malley*, Civil Action No. CDA-23-307, 2024 WL 404405, at *3–4 (D. Md. Feb. 2, 2024). As discussed below, the ALJ failed to follow each of these requirements.

*First*, the ALJ inadequately assessed the extent to which Smith could perform daily activities. In discussing Smith's daily activities in the symptom analysis, the ALJ stated the following:

> [Smith] stated that she does not do much aside from watch television and play on her computer. She stated that she does not leave her house unless she has to. The claimant reported that she takes care of her 4-year-old granddaughter, including dressing her and doing her hair. She stated that her husband helps her with this. The claimant reported that she has a hard time sleeping and wakes up in the middle of the night. She

did not report any problems with hygiene or personal care. She stated that she is able to ride in a car, but that she does not drive. She is able to shop in stores for food. She reported that she is able to pay bills, count change, handle a savings account, and use a checkbook. The claimant stated that she does not need special remind[ers] to take her medicine. She stated that she prepares sandwiches and microwave dinners independently. She also does laundry and cleaning. As for social activities, she stated that she talks to her daughter on the phone every day. The claimant reported that she avoids crowds[.]

R. 2008. Thus, the ALJ generally described Smith's daily activities. This description, however, does not account for the extent to which Smith can perform these activities and is, at times, contradicted by the record. Not only does Smith not "leave her house unless she has to," the record reflects she does not go out alone. R. 55–56, 1287. The ALJ noted that Smith "has a hard time sleeping and wakes up in the middle of the night," but did not discuss how Smith testified that she may only sleep for 2-4 hours per night or not at all, and that as a result she naps almost daily. *See* R. 58, 86. The ALJ stated that Smith could go grocery shopping, but did not explain that she only does so for about 15 minutes early in the morning or at night to avoid crowds. R. 52, 80, 1287. Although the ALJ pointed out that Smith avoids crowds, the ALJ did not mention that, for Smith, a crowd is more than five people. R. 52. The ALJ discussed how Smith does laundry and cleans, but failed to account for inconsistent testimony regarding whether Smith did laundry herself, and failed to mention that she spends fifteen minutes per week doing those tasks. R. 51–52, 1288. Notably, as discussed previously, the ALJ failed to discuss the evidence surrounding whether Smith can concentrate on reading for leisure. *See* R. 60, 83, 542, 962. Because the ALJ failed to discuss the extent to which Smith can perform many daily activities, the Court cannot adequately assess whether these activities, placed in their proper context, support the ALJ's conclusion that Smith could work a 40-hour work week. This was error.

*Second*, the ALJ also failed to explain how Smith's daily activities indicated she could work a 40-hour work week. In a paragraph that appears to discuss the ALJ's rationale for Smith's RFC, the ALJ stated that Smith "reported that she is able to ride in a car, cook light meals, do laundry, shop for groceries, manage money, socialize with her mother by phone every day, and watch television." R. 2012. Other than this recitation of Smith's daily activities, the ALJ "provided no explanation as to how those particular activities ... showed that [s]he could persist through an eight-hour workday." *Arakas*, 983 F.3d at 100. The ALJ thus erred by preventing the Court from properly reviewing whether Smith's daily activities supported the ALJ's finding that she could work a 40-hour work week.

The ALJ failed to discuss the extent to which Smith could perform daily activities and did not explain how such activities indicate her ability to work a 40-hour work week. As a result, the ALJ erroneously assessed Smith's daily activities.

The ALJ erred because he discounted Smith's subjective complaints using objective medical evidence, failed to explain how Smith's symptoms affected her ability to work, and inadequately assessed her daily activities to determine whether she had the ability to work. Accordingly, the Court remands this case to the SSA. On remand, the ALJ should conduct a proper analysis of Smith's subjective complaints, symptoms, and daily activities. As to the arguments Smith raised that the Court did not address, the ALJ is welcome to consider these arguments on remand. The Court expresses no opinion as to whether the ALJ's conclusion regarding Smith's entitlement to benefits is correct.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

Date: March 10, 2026

_____/s/_____
Chelsea J. Crawford
United States Magistrate Judge